This child custody case was initiated by a petition for change of custody filed by Jessie J. Webb, the natural father of six-year-old Antavious Jones. The child's mother is Valisha Jones. The parents of the minor child have never been married. The child was declared to be the son of Jessie J. Webb by the Montgomery County Circuit Court on June 13, 1983. In the same order the court awarded legal custody of Antavious Jones to his mother. In September 1987, the father filed a petition seeking change of custody. A hearing was held, and on January 12, 1988, the Montgomery County Circuit Court found Antavious Jones to be a dependent child, as defined by § 12-15-1, Code 1975 (1986 Repl.Vol.). The court then awarded custody of the child to the father.
Ordinarily, a judgment of dependency and subsequent transfer of custody of a child as provided for in § 12-15-71, Code 1975 (1986 Repl.Vol.), are governed by the child's best interests, such as the child's age, sex, health, and any emotional, social, and material needs. See Jensen v. Short, 494 So.2d 90
(Ala.Civ.App. 1986). Both statute and case law seem clear that once dependency is determined, the trial court is authorized to make certain dispositions, including transferring the legal custody of a dependent child to a relative. Section 12-15-71, supra; Sanders v. Guthrie, 437 So.2d 1313
(Ala.Civ.App. 1983). But the mother did not present any issue in this appeal concerning the adjudication of dependency. Instead, she contends that the proper standard is that required by Ex parteMcLendon, 455 So.2d 863 (Ala. 1984), which holds that a change of custody of a child must not only materially promote the child's best interest, but that evidence must be produced to overcome the "inherently disruptive effect caused by uprooting the child."
At first glance it would appear that a judicial determination finding a child dependent would obviate any necessity to apply the McLendon standard, the principal thrust of which concerns separating the child from his present custody arrangement *Page 375 
in order to transfer custody to another. Certainly such situations exist, but in the instant case we are satisfied thatMcLendon does apply. Our consideration of all the matters before us convinces us that this case comes here more in the shape of a change of custody case than a determination of dependency case, even though the evidence tends to narrowly support the trial court's finding of dependency.
While we agree with the mother that McLendon provides the appropriate standard by which this custody transfer should be gauged, we do not agree that the burden required by McLendon
was not met by the evidence presented to the trial court.
The record reveals that when legal custody of Antavious was awarded to his mother in 1983, an older sister was his only sibling. Since 1983, the mother has given birth to three other children, and all five children are living with the mother. The mother has moved three or four times since Antavious was born, including one move to the state of Washington. She also lived for "periods of time" with her friend, Virginia Harper.
The mother and her five children are totally dependent on Aid to Dependent Children, food stamps, and gratuities from individuals. The father is in arrears in his child support, but the amount is uncertain.
The mother denies that her home is not properly supervised and that Antavious is left with only the other children (the oldest is age ten) when she is away from the home. She says that, on some occasions, she has left the children with a fifteen-year-old baby-sitter, but denies that her meal preparation for Antavious and the other children is on an irregular basis.
The father and his wife reside in a middle class suburban neighborhood. Both are employed, with a combined weekly income of approximately $530.
The trial court determined that the child's best interest would be served by placement with his father, since the mother maintained only a marginally adequate home for Antavious and his siblings. The trial court also found that the child enjoyed a good relationship with his father. The home evaluation report prepared by the Department of Human Resources pointed out that the father had the resources available to provide the child with a stable environment.
We are satisfied that the father met the burden ofMcLendon by showing that the best interests of the child would be materially promoted by the change of custody and that the change would overcome the inherently disruptive effect caused by uprooting the child.
In view of the foregoing, we are unable to say that the trial court erred in the custody determination.
This case is affirmed.
AFFIRMED.
BRADLEY, P.J., and HOLMES, J., concur.