667 So.2d 1357 (1994)
C.P.
v.
M.K. and R.M.K.
(In the Matter of O.P.).
AV92000523.
Court of Civil Appeals of Alabama.
February 11, 1994.
*1358 F. Patrick Loftin of Loftin, Herndon & Loftin, Phenix City, for appellant.
Michael J. Bellamy, Phenix City, for appellees.
ROBERTSON, Presiding Judge.
This case is before us for the second time. In C.P. v. M.K., 618 So.2d 126 (Ala.Civ.App. 1992), cert. denied, 618 So.2d 126 (Ala.1992), we reversed and remanded for the trial court to determine if the mother was an unfit and improper person to be entrusted with the care and upbringing of her minor child under the standard set out in our supreme court's opinion in Ex parte Terry, 494 So.2d 628 (Ala.1986), because the record evidence did not support a finding of dependency that would bring the child within § 12-15-71, Ala. Code 1975.
After the remand, the mother, C.P., filed a motion requesting that the minor child be returned to her custody. Without taking any additional testimony or other evidence, the trial court entered a judgment finding the mother to be an unfit and improper person to be entrusted with the care and upbringing of the minor child, and it again found the minor child to be a dependent child, pursuant to § 12-15-1(10), Ala.Code 1975. The trial court awarded temporary custody of the minor child to the petitioners, maternal uncle and the uncle's wife, and awarded the mother the right of weekend visitation with her minor child.
The mother appeals again, contending that the petitioners failed to present substantial evidence to warrant the removal of custody from the parent.
Although, as previously stated, the trial court found the minor child to be dependent, the record does not contain sufficient evidence to support that finding of dependency. "Ordinarily, a judgment of dependency and subsequent transfer of custody of a child as provided for in § 12-15-71, [Ala.Code 1975], are governed by the child's best interests...." Jones v. Webb, 524 So.2d 374 (Ala.Civ.App.1988). As Judge Ingram wrote in Jones, "Both statute and case law seem clear that once dependency is determined, the trial court is authorized to make certain dispositions, including transferring the legal custody of a dependent child to a relative. Section 12-15-71, [Ala.Code 1975]; Sanders v. Guthrie, 437 So.2d 1313 (Ala.Civ.App. 1983)." Jones, 524 So.2d at 374. Further, this court recognizes that there will be instances when a child is dependent or in need of supervision, and the parent or parents are not unfit, i.e., when a child disobeys his or her parents and is beyond their control, § 12-15-1(4)b., Ala.Code 1975, has committed an offense established by law but not classified as criminal, § 12-15-1(4)c., Ala. Code 1975, or when the child's parents are unable to discharge their responsibilities to the child (illness, injury, hospitalization, etc.), § 12-15-1(10)k., Ala.Code 1975.
As in Jones, our review of the record evidence convinces us that this case is more of a custody case than a determination of dependency case. Hence, the Terry standard applies since the custody dispute is between a parent and a nonparent. Terry, supra. Under the Terry standard, a parent has a presumptive right to custody of his or her child in a custody dispute between the parent and a nonparent, and that presumptive right may be overcome only by proof that the parent "is guilty of misconduct or neglect to a degree rendering that parent an unfit and improper person to be entrusted with the care and upbringing of the child in question." 494 So.2d at 632. (Citations omitted.)
The evidence presented at the original proceeding reflects that the mother was a high school student, living with her father (the child's maternal grandfather). The maternal grandmother is deceased. The mother testified that she worked 30 to 35 hours a week, earning $4.25 per hour. She receives $366 per month in Social Security benefits as the result of her mother's death. The mother further testified that she made arrangements for a babysitter to care for the minor child while the mother attended school. The maternal grandfather testified that he had agreed to care for the minor child while the mother was at work and that the minor child had his own room in the maternal grandfather's home, where the mother lived.
*1359 The record also contains a study of the mother's home, prepared by the Russell County Department of Human Resources at the request of the trial court. The home study did not indicate that the mother was an unfit or neglectful parent. Furthermore, the record is devoid of any evidence indicating that the mother is guilty of misconduct or neglect to such a degree as to render her an unfit and improper person to be entrusted with the care and upbringing of her minor child.
The judgment of the trial court is reversed, and this case is remanded for the entry of a judgment granting custody of the minor child to the mother.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, J., concurs.
THIGPEN, J., concurs in part and dissents in part.
THIGPEN, Judge, specially concurring in part and dissenting in part.
I concur that the record does not support a finding that the mother is unfit, and, therefore, that finding must be reversed; however, I do not agree that the trial court is now required to enter a judgment granting custody to the mother. Although I concurred in the remand of the original case, upon closely revisiting this case, I am now convinced that no finding regarding fitness is required.
Although the original opinion characterized the case as one involving "a custody dispute between nonparents and a parent," the reasoning utilized by the majority in that opinion overlooked the critical language of the longstanding precedent concerning a natural parent's voluntary relinquishment of the right to a child's custody. C.P. v. M.K., 618 So.2d 126, 127 (Ala.Civ.App.1992). See Ex parte Terry, 494 So.2d 628 (Ala.1986). Further, I refuse to extend the unfitness requirement to a situation involving dependency found pursuant to the juvenile code. Ala. Code 1975, § 12-15-1 et seq. To require a finding of a parent's unfitness, following a finding that the child is dependent, imposes a requirement outside the statutes and existing case law. It appears to me that confused pleading and proof at the trial level have misled the course of this case on a journey of merged legal requirements.
After careful reexamination and reconsideration of the facts in the present case, which were the same as those involved in the original appeal, I now realize that application of the correct legal principles mandates that in the original appeal, the judgment of the trial court should have been affirmed; as such, I now realize that I should have dissented from the majority opinion in the original appeal. Also, I now conclude that I may have been incorrect in concurring with the majority in P.M.L. v. D.T.P., 613 So.2d 1288 (Ala.Civ. App.1992), which was a similar situation wherein the appealing parent specifically challenged the juvenile court's finding of dependency, and this court did not address that issue.
In the original appeal of this case, this court reversed the judgment of the trial court, and remanded the cause "for the trial court to determine if the mother is an unfit and improper person to be entrusted with the care and upbringing of the minor child." C.P. 618 So.2d at 127. There, and now on this appeal, the majority has failed to consider the assertions of the petitioners that the mother voluntarily relinquished her prima facia right to custody, and also that the trial court found that the child was a dependent child pursuant to Ala.Code 1975, § 12-15-1(10). Furthermore, in both instances, this court has not recognized that the trial court expressly stated to the parties that "what I'll be weighing the evidence against will be the statute on dependency." That language is a clear indication to me that the trial court considered this case to be a dependency case, not a custody case, as characterized by the majority opinions on both occasions.
It appears to me that the confusion in this case is the unfortunate result of an amalgamation of requirements involving custody, dependency, and the termination of parental rights. The procedural history of the case apparently ventured off course when the original petition in juvenile court alleged that the child was dependent and sought temporary custody. Following an initial hearing, *1360 the trial court ordered that the child be placed in shelter care with the petitioners, and it ordered specific and unrestricted visitation for the mother. Ala.Code 1975, §§ 12-15-53 through -60. At the initial hearing, the trial court specifically noted, among other things, the involvement of the Department of Human Resources (DHR), the allegations of abuse and neglect, and the allegations regarding the putative father's violent behavior towards the mother which could endanger the child's safety.
Subsequently, a hearing was held wherein the trial court considered testimony, reports, evaluations, and recommendations accumulated from the petitioners, the mother, the putative father, the child's maternal grandfather, a neighbor of the petitioners and the mother, and social workers representing the interests of the Department of Human Resources (DHR).
At that hearing, there was conflicting evidence regarding where the child had lived and who had cared for him for most of his life, the mother's involvement with him, the mother's involvement with his father, the mother's subsequent miscarriage, the mother's immature and irresponsible behavior towards the child and others, the lack of supervision provided to the mother by the maternal grandfather, the mother's school and employment experience, the mother's financial resources and her lack of interest in providing for the child's needs, etc. To further confuse the procedural history of this case, facts were asserted at that hearing that virtually track the requirements contained in the statute governing the termination of parental rights. See Ala.Code 1975, § 26-18-7.
When the original appeal was considered, I believe this court was persuaded by the procedural confusion, and that it continued off course ignoring the dependency issue. Additionally, although the case was reviewed on appeal as a custody case, no consideration was given to the factor of Terry, supra, regarding the showing of the mother's voluntary relinquishment of her right to custody. The relinquishment aspect of this case has not been addressed in either appeal, although the petitioners argue, and there is ample evidence in the record to support a finding, that the mother did in fact voluntarily relinquish her prima facie right to the custody of this child. Because it now appears to me that the petitioners proved the required voluntary relinquishment, a finding regarding the fitness of the mother is unnecessary if this case is considered as merely a custody dispute between a parent and a non-parent. Terry, supra. Therefore, if this case were in fact a pure custody dispute involving a nonparent and a parent, the trial court should have been affirmed on the first appeal because the Terry requirement of voluntary relinquishment had been met, and no finding regarding fitness was required.
It is also significant to me that in custody cases where there is ore tenus evidence presented, this court has historically given great deference to the discretion of the trial court hearing the case. This is because "the perception of an attentive trial judge is of great importance," especially in custody cases. Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App.1981).
When the petitioners alleged that the child was dependent, that terminology triggered the trial court to utilize the dependency statutes of the juvenile code. The trial court was very clear to the parties that it viewed this case as a dependency case. From the record, it appears that the lawyers also considered the language in the statutes regarding the termination of parental rights. The unfortunate result has been the failure to consider on appeal the best interests of this child.
On remand, in addition to doing exactly as the original appeal instructed (i.e., to determine if the mother is unfit), the trial court again adjudicated the child to be a dependent child pursuant to Ala.Code 1975, § 12-15-1(10), and it placed temporary custody of the child with the petitioners, ordering liberal visitation for the mother. Obviously, the trial court is willing to do whatever it is instructed to do by this court, in order to safeguard the child's best interests by placing the temporary custody of this child with the petitioners, who are willing to continue to provide a safe and stable environment for the child while the mother matures and prepares *1361 for parenting the child. It is obvious from the record that the dependency adjudication resulted from this child's lack of proper parental care and is based on the mother's unwillingness or inability to properly care for her child at this time. The record supports an adjudication of dependency based on any or all of the following portions of Ala.Code 1975, § 12-15-1(10)b., -1(10)f., -1(10)g., -1(10)i., -1(10)j., -1(10)k., and -1(10)m. Those portions list specific situations where, like here, a child's parent causes the child's dependency. The record is clear that although the mother is not necessarily unfit, she has little interest in adjusting her circumstances to care for her child. To require the trial court to now return custody of the child to the very parent that caused his dependency is antithetic to logic. That is perhaps the strongest practical reasoning that the instruction by the majority to grant custody to the natural mother is inconsistent. I disagree with that illogical instruction and believe that this opinion perpetuates the legally incorrect result of the original opinion. Because a court determines a child to be dependent, it does not always necessarily follow that the parents are unfit. There can be numerous situations when a parent's temporary disability renders a child dependent without reflecting the parent's fitness.
The instant case is distinguishable from Jones v. Webb, 524 So.2d 374 (Ala.Civ.App. 1988). That case involved two unmarried parents competing for a child's custody where the trial court also found the child to be dependent. This court affirmed the custody change utilizing the McLendon standard. There, this court determined that the case was "more in the shape of a change of custody," that the evidence "tends to narrowly support the trial court's finding of dependency," and that the mother "maintained only a marginally adequate home" for the child. It appears in Jones, supra, that the finding of dependency was only incidental to the father's petition for custody, whereas, in the instant case, the finding of dependency is at the very core of the trial court's rationale and announced procedure. Furthermore, there is ample clear and convincing evidence in this record to support the finding of this child to be a dependent child.
The record in the instant case discloses that this child is the illegitimate product of a relationship between a 13-year-old girl and a 17-year-old boy. Although the putative father and his family have shown only negligible interest in this child, the relationship has resulted in a subsequent pregnancy that ended with a miscarriage. There is testimony in the record regarding the putative father's erratic behavior and the mother's neglect of the child to "spend more time chasing" the father. Although the mother testified that she desires to finish school, other evidence discloses her truancy and tardiness at school which has necessitated the involvement of others in attempting to supervise the mother. The maternal grandfather indicates a willingness to have his grandchild and his daughter live with him; however, he offers little or no supervision for the child's teenage mother, and he admits his inability to properly supervise her and control her behavior.
The record further discloses that the petitioners have cared for the child since the child was only a few weeks old. Their care and concern for this child surpass a mother's mere request that the petitioners care for the child temporarily at necessitous times. Although the mother may have visited the child, she has not maintained sufficient contact with him, she has failed to offer support for him, and she has not offered him a stable environment. Further, the record reveals that when the mother takes the child from the petitioners' home for visitation, she generally returns the child without having cared for his immediate physical needs, such as hunger and cleanliness. Although the mother claims that she can provide housing, care, financial support, and proper supervision for the child, the record reveals that she has consistently failed to do so when afforded the opportunity. A social worker, who testified regarding the mother's lack of parenting skills and her immaturity, also testified that DHR had an open protective services case on the child because of reports regarding possible abuse and neglect. She testified that it was not necessary for DHR to file any action seeking protective custody of this child based on the petitioners' decision to seek this child's custody. She further recommended *1362 that the child remain with the petitioners, with the mother given liberal visitation, to allow the mother the opportunity to complete school, to mature, and to improve her parenting skills.
The result of the majority opinion places a three-year-old child with a sixteen-year-old mother who has had only limited involvement with the child and fails to consider the child's best interests. This is not a case involving the irrevocable termination of parental rights, and the question of child custody is never res judicata. Dale County Department of Pensions & Security v. Robles, 368 So.2d 39 (Ala.Civ.App.1979). The mother is being afforded liberal visitation, and she is being assisted by others towards the goal of reuniting with her child. The petitioners are the mother's aunt and uncle, and they are neighbors of the maternal grandfather. The record is replete with evidence regarding the support offered to the mother from the petitioners, DHR, other relatives, and neighbors to help the mother adjust her circumstances to meet the child's needs. It is abundantly clear from the record that the trial court, guided by what is in the best interests of the child, is also attentive to the mother's rights and is providing her ample opportunity to prepare herself for full-time parenting of the child, while also providing her the opportunity to maintain sufficient contact with the child.
Viewed another way, i.e., as a dependency case, as the trial court clearly indicated it would do, the record contains clear and convincing evidence that this child is dependent, and the finding of dependency is not challenged on appeal. Following the shelter care period, the juvenile court had the authority to place the child in the custody of the petitioners. Ala.Code 1975, §§ 12-15-62(a)(1) and 12-15-71(a)(3)c. There is no requirement to find the parent unfit when dependency is found and temporary custody is placed with a relative to protect the welfare of the child. The well-settled rule is that the best interests of the child are controlling in custody cases. Matter of Young, 456 So.2d 823 (Ala.Civ.App.1984).
Once dependency is found, the trial court is authorized "to make any number of dispositions including transfer of legal custody to a relative who, after study ... is found by the court to be qualified to receive and care for the child." Sanders v. Guthrie, 437 So.2d 1313, 1316 (Ala.Civ.App.1983). Upon closely revisiting the facts of this case, I now recognize that the trial court's decision to grant temporary custody to the petitioners followed a finding of dependency that brought the child under the protective jurisdiction of the court. That decision in no way ignored the mother's rights. See Ala.Code 1975, § 12-15-71. See also M.M. v. C.M., 600 So.2d 316 (Ala.Civ.App.1992); K.W. v. State Department of Human Resources, 575 So.2d 579 (Ala.Civ.App.1991); Jones v. Webb, 524 So.2d 374 (Ala.Civ.App.1988); Floyd v. Alabama Department of Human Resources, 550 So.2d 980 (Ala.Civ.App.1988), aff'd, 550 So.2d 982 (Ala.1989); Heup v. State of Alabama Department of Human Resources, 522 So.2d 295 (Ala.Civ.App.1988); and Minchew v. Mobile County Department of Human Resources, 504 So.2d 310 (Ala.Civ.App.1987).
The finding regarding dependency is supported by clear and convincing evidence, and, therefore, the trial court was authorized to proceed and award custody to the petitioners pursuant to the statute. D.K.G. v. J.H. and T.H., 627 So.2d 935 (Ala.Civ.App.1992). Accordingly, although I agree that the record does not support a finding that the mother is unfit, I do not believe that such a finding is required. As such, I must respectfully dissent.